

IN THE
TENReader COURT OF APPEALS
_____

No. 10-13-00022-CV

IN THE INTEREST OF G.W. AND K.K., CHILDREN
_____

From the 220th District Court
Hamilton County, Texas
Trial Court No. FM06311

---

## MEMORANDUM  OPINION

---

Destiny W.[1] appeals from a judgment terminating her parental rights to her two children, G.W. and K.K., who had been removed from her by the Department of Family and Protective Services.  TEX. FAM. CODE ANN. § 161.001 (West 2008).  Destiny complains that the evidence was legally and factually insufficient to support the trial court's findings as to five separate predicate grounds for termination of her parental rights and that the termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (F), (N), & (O) (West 2008).  Because we find that the evidence was legally and factually sufficient to support the trial court's findings as to section 161.001(1)(E) for endangerment and that the termination of her parental rights was in

---

[1] We will use Appellant's first name only in order to protect the identity of the children.  *See* TEX. R. APP. P. 9.8(b)(1)(B).

the children's best interest, we affirm the judgment of the trial court.

*Burden of Proof*

In this proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services was required to establish one ground listed under subdivision (1) of the statute and to prove that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and children. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

*Legal and Factual Sufficiency*

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a

firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id*. We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. We must consider, however, undisputed evidence even if it is contrary to the finding. *Id*.

It is necessary to consider all of the evidence, not just that which favors the verdict. *J.P.B.*, 180 S.W.3d at 573. However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id*. at 573-74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id*. at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not

reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

*Endangerment*

Destiny complains that the evidence was legally and factually insufficient for the trial court's finding of endangerment under subsection 161.001(1)(E) by clear and convincing evidence. The trial court found that the Department had proven by clear and convincing evidence that Destiny engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). Under subsection 161.001(1)(E), the term "endanger" means the children were exposed to loss or injury or jeopardized. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Endangerment encompasses "more than a threat of metaphysical injury or possible ill effects of a less-than-ideal environment." *Boyd*, 727 S.W.2d at 533. Likewise, although endangerment under subsection 161.001(1)(E) often entails physical endangerment, the statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the emotional well-being of the children. *See id.*

The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the children's physical or emotional well-being. *See Boyd*, 727 S.W.2d at 534. The conduct need not occur in the child's

presence. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Additionally, in considering whether a relevant course of conduct has been established, a court may properly consider evidence establishing that a parent continued to engage in endangering conduct after the children's removal by the Department or after the children no longer were in the parent's care, thus showing the parent continued to engage in the course of conduct in question. *See In the Interest of S.T.*, 263 S.W.3d 394, 401-02 (Tex. App.—Waco 2008, pet. denied); *see also Walker*, 312 S.W.3d at 617.

Destiny became involved with the Department in February of 2011 based on concerns of an unstable environment for the children and exposure of the children with people using drugs, including Destiny. At that time, Destiny was living with Billy, who was a person that Destiny admitted had outstanding warrants, one of which was for an aggravated assault. Prior to the children's removal in July of 2011, Destiny tested positive for methamphetamines twice and had moved several times since February of 2011.

The fathers of G.W. and K.K. each had histories of violence and drug use.[2] Destiny had allowed G.W.'s father to take care of the children while she was at work even though she knew he had been in and out of prison and had observed him to be high on drugs. Destiny got pregnant with G.W. when she was 14 years old and he was

---

[2] Both of the fathers' parental rights were terminated, however, neither of the fathers of the children are parties to this appeal.

approximately 26 years old. Destiny remained in a relationship with K.K.'s father knowing he had anger issues and after an incident where he threw a tequila bottle across a room while she and G.W. were in the room with him, although it was disputed as to whether he threw the bottle at them or near them. Destiny also admitted to using drugs with K.K.'s father. Destiny had also allowed her mother to care for the children even though her mother is a drug addict as well. Destiny denied ever using drugs around the children.

Subsequent to the children's removal, in December of 2011 Destiny was arrested in an incident involving Billy. Officers arrived at Billy's mother's house where they were also staying to arrest Billy for outstanding warrants. After telling the police he needed to get some money from his girlfriend he instead went into their bedroom and hid something in the bathroom next to the bedroom where Destiny was lying on a bed. When the officers followed them into the room, Billy yelled at Destiny to get into the bathroom, presumably to dispose of a methamphetamine pipe that was later discovered there. Destiny attempted to push past the officers and even tried to crawl through them. She then went outside and attempted to enter the bathroom through a window. Destiny was handcuffed and placed in a patrol car. She pulled off the handcuffs, got out of the vehicle, and tried to re-enter the house. Destiny was arrested for interfering with public duties, tampering with evidence, and escape. Billy was arrested on a warrant for an aggravated assault.

Additionally, in December of 2011 Destiny was denied visitation because she tested positive for methamphetamines. In September of 2012 Destiny tested positive for THC, but tested negative a couple of days later. Destiny alleged that she was in a car with people who were smoking marijuana, although a licensed chemical dependency counselor testified that this was not likely. At the time of the positive drug test Destiny was approximately six months pregnant with Billy's child. Destiny admitted to a lengthy history of methamphetamine and marijuana use to the person who gave her the court-ordered drug assessment, although she denied any recent drug use prior to the final hearing.

Additionally, Billy was seen approximately two weeks prior to the final hearing at the same residence as Destiny even though Destiny had admitted that Billy was not an appropriate person to be around the children.

Using the appropriate standards for determining the sufficiency of the evidence, we find that the evidence was legally and factually sufficient to support the trial court's finding pursuant to section 161.001(1)(E). We overrule issue five. Because we have found the evidence sufficient to establish one predicate ground for termination, we do not need to address issues one, two, three, and four.

*Best Interest*

Destiny complains that the evidence was legally and factually insufficient for the trial court to have found that termination was in the children's best interest. In

determining whether termination of Destiny's parental rights was in the children's best interest, we consider numerous factors, including (1) the children's desires, (2) the current and future physical and emotional needs of the children, (3) the current and future physical danger to the children, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the children, (6) plans for the children by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is no requirement that the Department prove all these factors as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27-28.

The evidence showed that Destiny had exposed the children to three men who were drug users, had criminal pasts, had anger problems, and had gotten pregnant by each of them.[3] She was arrested for felony offenses for trying to assist Billy, her latest paramour and the father of her unborn child, during the pendency of the case. Destiny tested positive for methamphetamines both at the time of the removal and during the

---

[3] Because Destiny had not given birth to her third child, that child is not at issue in this appeal.

pendency of the case and admitted to a history of methamphetamine and marijuana use.

Destiny's contact with the children was sporadic at best for the first year of the case, with her having no visits at all for months before the children were removed from her sister at her sister's insistence. After that time, which was approximately a year and two months after the children's removal and three months before the final hearing, Destiny started working on her service plan but had not completed it. Even when Destiny started diligently working on the plan, she moved three times in the three months before trial. She had been in HUD housing for two weeks prior to the final hearing and received $48 monthly in utility assistance. Destiny was occasionally cleaning houses but was otherwise unemployed. She had no specific plans regarding how she would be able to care for the children other than seeking additional governmental assistance. Destiny was due to give birth to her third child relatively soon after the final hearing.

The children were doing very well in a foster placement where the caregivers wanted to adopt the children. Destiny was seeking a monitored return but recognized that it would take time to accomplish. She did not have a plan to avoid using drugs and did not attend AA/NA. Her counselor did not believe that she had made sufficient progress in therapy regarding her poor choices in paramours.

Although Destiny had made significant improvement over the last three months

of the case and had exercised regular visitation with the children, we find that the evidence was legally and factually sufficient for the trial court to have found by clear and convincing evidence that termination of the parent-child relationship was in the children's best interest. We overrule issue six.

*Conclusion*

Having found that the evidence was legally and factually sufficient as to one predicate ground and the best interest of the children, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed April 18, 2013
[CV06]